**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **PHILIP SIEFKE**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TOYOTA MOTOR NORTH AMERICA, INC., PROGRESSIVE CASUALTY INSURANCE COMPANY, CONNECTED ANALYTIC SERVICES,**<br><br>Defendants. | Case No. 4:25-cv-00406-ALM |

**DEFENDANT CONNECTED ANALYTIC SERVICES' JOINDER TO MOTION TO COMPEL ARBITRATION**

Defendant, Connected Analytic Services ("CAS"), by and through its undersigned counsel, hereby adopts and joins Defendant Toyota Motor North America, Inc ("Toyota")'s Motion to Compel Arbitration (ECF No. 31) ("Motion to Compel"). CAS respectfully requests the same relief in this matter regarding Toyota's Motion to Compel.

**BACKGROUND**

As set forth in Toyota's Motion to Compel, Plaintiff accepted and is bound by multiple versions of Toyota's Connected Services Terms of Use in effect from March 20, 2021 through January 21, 2025 ("Terms of Use") via the Toyota Mobile App and his use of Connected Services, the telematics system in his subject-vehicle. (ECF Nos. 31-2, 31-3, 31-4, each, a Toyota Terms of Use.) Those Terms of Use include a conspicuous provision entitled, "NOTICE OF MANDATORY ARBITRATION PROVISION" and require, in relevant part, arbitration of any dispute "regarding the Services, System, Software or Service Content or any other aspect of this Agreement."

The dispute at issue in this putative class action seeks to hold Toyota responsible for the alleged "unauthorized collection and dissemination of private information collected from Toyota vehicles owned or leased by the Plaintiff and Class Members." *See* Complaint (ECF No. 1) ¶ 1. The Complaint alleges that Toyota "captur[ed Plaintiff's] Driving Data through their ***connected services***." Compl. ¶ 177 (emphasis added); *see also id*. ¶¶ 23, 24, 122 (quoting and referencing "connected services"). These core allegations expressly refer to the "Services" in the Terms of Use (which include "Connected Services," as well as the use of the Toyota Mobile App) and regard the "System" (which is the "telematics system" installed in Plaintiff's vehicle).

"Toyota" is broadly defined in the Terms of Use to include "Toyota Motor Sales, USA, Inc. and/or its affiliates [or] Service Providers," which include "third parties (whether or not identified) who provide any service, equipment, or facilities in connection with the System or Services." *See* Decl. of Joe Guerin, at ¶ 7, attached as **Exhibit 1**.

**Defendant <u>CAS is a Toyota affiliate</u>**—*see id.* at ¶ 4—and therefore is included within the definition of "Toyota" within the parties' mandatory arbitration clause; *see also* CAS Corporate Disclosure Statement (ECF No. 16). CAS provides its Insure Connect program through Toyota's Connected Services. *Id.* at ¶ 5; *see also* Toyota Privacy Notice (ECF No. 31-6) at IV.1.b ("We may share your Personal Information with … Our Affiliates. … if you opt-in, for use-based insurance products"); *id*. at IV.2.i.e ("If you provide express prior consent, we may also share your Driving Data with our affiliates … to provide you with use-based insurance information and offers").

## ARGUMENTS AND AUTHORITIES

As set forth in Toyota's Motion to Compel, Plaintiff entered a valid, enforceable contract under which he agreed to submit claims "regarding the Services" to binding individual arbitration. *See Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc*., 219 S.W.3d 563, 589 (Tex.

App.-Austin 2007) (applying the objective standard to assess contract formation); *JLR Glob., LLC v. Paypal Holding Co.,* No. 4:22-CV-559, 2023 U.S. Dist. LEXIS 43684, at *6 n.1 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) (finding and enforcing valid clickwrap agreement to hyperlinked terms of use under Delaware law). Plaintiff unambiguously manifested his assent to that arbitration clause by affirmatively clicking "Accept" when prompted to do so. *JLR Glob., LLC.*, 2023 WL 2527158, at *4 (Mazzant, J.) ("In clickwrap agreements, an affirmative click is deemed an actual signature that binds the parties."). And as detailed in Toyota's Motion to Compel, Plaintiff unambiguously manifested his assent after viewing a reasonably conspicuous notice when viewed from the perspective of "a reasonably prudent smartphone user." *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019).

The arbitration clause broadly applies to Toyota and its affiliates. CAS is a Toyota affiliate. *See* **Exhibit 1**, at ¶ 4; *see also* CAS Corporate Disclosure Statement (ECF No. 16). The Terms of Use expressly provide that Toyota and its affiliates—including CAS—can compel any dispute "regarding the Services, System, Software or Service Content" to binding arbitration. And even if the Court treats CAS as a third party to the Terms of Use, non-signatory beneficiaries of arbitration agreements can compel arbitration when the contract clearly evidences an intent to bind those beneficiaries. *See Stellar Restoration Servs., LLC v. Courtney*, 533 F. Supp. 3d 395, 423–24 (E.D. Tex. 2021). The arbitration clause expressly contemplates that consumers like Plaintiff may assert claims "regarding the Services, System, Software or Service Content" against Toyota affiliates. *See* **Exhibit 1**, at 7. The arbitration clause further expressly provides that consumers like Plaintiff must submit those claims to binding arbitration. *Id.* at ¶ 8. Thus, CAS can compel Plaintiff to arbitrate to the same extent as Toyota. *Courtney*, 533 F. Supp. 3d at 423–24.



#523723034_v7

Plaintiff's core allegations expressly refer to the "Services" in the Terms of Use (which include "Connected Services," as well as the use of the Toyota Mobile App) and regard the "System" (which is the "telematics system" installed in Plaintiff's vehicle). As noted above, CAS provides its Insure Connect program at issue in this case through Toyota's Connected Services. *See* **Exhibit 1**, at ¶¶ 5-6; Toyota Privacy Notice (ECF No. 31-6) at IV.1.b ("We may share your Personal Information with … Our Affiliates. … if you opt-in, for use-based insurance products"); *id*. at IV.2.i.e ("If you provide express prior consent, we may also share your Driving Data with our affiliates … to provide you with use-based insurance information and offers"). Thus, Plaintiff's claims against CAS fall squarely within the definition of arbitrable disputes as set out in the arbitration clause, given that CAS qualifies as *both* an "affiliate" and a "Service Provider" providing a "service … in connection with the System or Services." *See* **Exhibit 1**, at 7.

CAS also qualifies as a third party beneficiary under the Terms of Use. *See Harris v. QBE Ins. Corp*., No. A-19-CV-01024, 2020 WL 1902742, at *2 (W.D. Tex. Feb. 27, 2020) (deferring to state law on this issue); *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (qualifying a third-party beneficiary under Texas law where "the contracting parties intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit"). "To determine whether the contracting parties intended to directly benefit a third party ... courts must look solely to the contract's language, construed as a whole." *Brumitt*, 519 S.W.3d at 102. "A contract need not expressly name an intended third-party beneficiary," provided that it identifies any "specific, limited group of individuals to which the consenting parties owed an obligation." *Wal-Mart Stores, Inc. v. Xerox State & Local Solutions, Inc*., 663 S.W.3d 569 (Texas 2023) (quotations omitted). CAS is an affiliate of a party covered by the arbitration agreement (Exhibit 1, at ¶ 4), provides a service in connection with that very contract (*id*. at ¶ 5-6), and the contracting

parties expressly agreed to provide a benefit to affiliates and service providers under the contract. Terms of Use at § 16 ("Any Third Party Service Provider involved in delivering your Services are intended third-party beneficiaries of the protections of this Agreement"); *id*. at § 21.d ("Our Third Party Service Providers and our affiliates are intended beneficiaries of this Agreement."). When a contract is unambiguous, we ascertain the contracting parties' intent from the words of the contract, which we interpret as a matter of law. *Brumitt* at 102, 105–07.

Even if Plaintiff challenges arbitrability of this dispute, the arbitrability determination has been delegated to the arbitrator to decide in the first instance. *See Kubala v. Supreme Prod. Servs., Inc*., 830 F.3d 199, 202 (5th Cir. 2016) ("But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."). Thus, Plaintiff's claims fall squarely within the scope of the arbitration clause.

## CONCLUSION

Accordingly, because Plaintiff has agreed to arbitrate his claims and such agreement extends between CAS and Plaintiff, CAS joins Toyota's Motion to Compel Arbitration. CAS respectfully requests that the Court dismiss this action and refer Plaintiff's claims to binding arbitration.

Dated: July 8, 2025

Respectfully submitted,

*/s/ Mark Francis*
Jessica Magee
State Bar No. 24037757
jessica.magee@hklaw.com
Tricia DeLeon
State Bar No. 24005885
tricia.deleon@hklaw.com
**HOLLAND & KNIGHT, LLP**
One Arts Plaza
1722 Routh Street, Suite 1500

Dallas, Texas 75201
(214) 964-9500
(214) 964-9501 (facsimile)

Mark Francis
mark.francis@hklaw.com
**HOLLAND & KNIGHT, LLP**
787 7th Avenue
31st Floor
New York, New York 10019
(212) 513-3200
(212) 385-9010 (facsimile)

Jacob B. Hadjis
Texas Bar No. 24134447
jacob.hadjis@hklaw.com
**HOLLAND & KNIGHT, LLP**
811 Main Street, Suite 2500
Houston, Texas 77002
(713) 821-7000
(713) 821-7001 (facsimile)

**ATTORNEYS FOR DEFENDANT,
CONNECTED ANALYTIC SERVICES**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Defendant Connected Analytic Services' Joinder To Motion To Compel Arbitration was served on all counsel of record via ECF on July 8, 2025.

/s/ *Mark Francis*
Mark Francis