## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| PHILIP SIEFKE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TOYOTA MOTOR NORTH AMERICA, INC., PROGRESSIVE CASUALTY INSURANCE COMPANY, and CONNECTED ANALYTIC SERVICES, <br><br> Defendants. | Case No. 4:25-cv-00406-ALM |

**TOYOTA MOTOR NORTH AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.    PROCEDURAL BACKGROUND......................................................................... 2

III.    ARGUMENT AND CITATION TO AUTHORITY............................................. 3

    A.    Toyota Has Established That Plaintiff Must Arbitrate His Claims Against it. ........ 3

    B.    Plaintiff Has No Legal Basis To Challenge Arbitration. ........................................ 4

        1.    Toyota's Terms of Use Notification Has Been Blessed by Fifth Circuit Courts. ..................................................................................... 6

        2.    Any Plausible Issues of Unconscionability or Consideration Have Been Delegated to the Arbitrator to Decide................................................ 9

IV.    CONCLUSION.................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
   219 N.J. 430, 99 A.3d 306 (2014)......................................................................................7

*Bacon v. Avis Budget Grp., Inc.*,
   959 F.3d 590 (3d Cir. 2020)...............................................................................................7

*Baldwin v. Beeche*,
   2021 WL 1377149 (E.D. Tex. Apr. 12, 2021) (Mazzant, J.)...............................................5

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022)...............................................................................................8

*Bongalis-Royer v. RJ Worldwide, LLC.*,
   2015 WL 12778846 (E.D. Tex. July 16, 2015)..................................................................6

*Charboneau v. Box*,
   2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) (Mazzant, J.).............................................4

*Chlarson v. EK Real Est. Servs. of N.Y., LLC*,
   2022 WL 2392648 (W.D. Tex. July 1, 2022).....................................................................9

*Dobbs v. Health IQ Ins. Servs.*,
   2022 WL 2974713 (E.D. Pa. July 27, 2022)......................................................................9

*Edwards v. Doordash, Inc.*,
   888 F.3d 738 (5th Cir. 2018)..............................................................................................9

*Ghazizadeh v. Coursera, Inc.*
   737 F. Supp. 3d 911 (N.D. Cal. 2024).......................................................................5, 6, 8

*Gill v. Chipotle Mexican Grill, Inc.*,
   2025 WL 287320 (C.D. Cal. Jan. 23, 2025).......................................................................8

*Hargrave v. Fibreboard Corp.*,
   710 F.2d 1154 (5th Cir. 1983)............................................................................................5

*Harris v. City of Schertz*,
   27 F.4th 1120 (5th Cir. 2022).............................................................................................5

*In re Palm Harbor Homes, Inc.*,
   195 S.W.3d 672 (Tex. 2006)............................................................................................10

*Jia v. Nerium Int'l LLC*,
   2018 WL 4491163 (N.D. Tex. Sep. 18, 2018)...................................................................6

*JLR Glob., LLC v. Paypal Holding Co.*,
  2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) ................................................4, 6

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ...............................................................................................8

*Mansour v. Stanley*,
  2025 WL 2380456 (E.D. Tex. Aug. 15, 2025) (Mazzant, J.) .............................................2, 3

*Maravilla v. Gruma Corp.*,
  783 F. App'x 392 (5th Cir. 2019) ...........................................................................................9

*May v. Expedia, Inc.*,
  2018 WL 4343445 (W.D. Tex. July 19, 2018) .......................................................................7

*McKimmy v. OpenSea*,
  2023 WL 6370907 (S.D. Tex. Mar. 22, 2023) ....................................................................4, 7

*Morrison v. Yippee Ent., Inc.*,
  2025 WL 2389424 (9th Cir. Aug. 18, 2025) ...........................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...................................................................................................................2

*MRK2 Brokerage LLC v. Deutsche Bank Nat'l Tr. Co.*,
  2024 WL 923213 (N.D. Tex. Jan. 10, 2024) ..........................................................................4

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ................................................................................................8

*Orellana v. Roblox Corp.*,
  769 F. Supp. 3d 1273 (M.D. Fla. 2025) ................................................................................10

*Phillips v. Neutron Holdings, Inc.*,
  2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ......................................................................4, 7

*Rent-A-Center v. Jackson*,
  561 U.S. 63 (2010) .................................................................................................................9

*Sanchez v. Nordstrom, Inc.*,
  2020 WL 3078533 (S.D. Fla. June 10, 2020) .........................................................................5

*Sharpe v. AmeriPlan Corp.*,
  769 F.3d 909 (5th Cir. 2014) ................................................................................................10

*Stone v. Exos Hum. Cap., LLC*,
  2025 WL 1898969 (S.D.N.Y. July 9, 2025) ...........................................................................7

*Toth v. Everly Well, Inc.*,
  118 F.4th 403 (1st Cir. 2024) ......................................................................................... 9

*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir. 2001) .......................................................................................... 5

*Walker v. Neutron Holdings, Inc.*,
  2020 WL 703268 (W.D. Tex. Feb. 11, 2020) ............................................................ 4, 6

*Willis v. Cleco Corp.*,
  749 F.3d 314 (5th Cir. 2014) .......................................................................................... 9

**RULES**

LR CV-7(i) ............................................................................................................................. 3

LR CV-7(d) ............................................................................................................................ 5

## I.     INTRODUCTION

Plaintiff agreed to arbitrate his claims asserted against Toyota Motor North America, Inc. ("Toyota") in this litigation. *See generally* ECF 31, Toyota's Motion to Compel Arbitration ("Motion to Compel"). There is no genuine dispute that, after purchasing his subject Toyota vehicle, Plaintiff downloaded the Toyota Mobile App ("Toyota App") and clicked through the screen flow evidenced by Toyota in its opening brief. *Id.* at 7–12.[1] And there is no dispute that Plaintiff has driven his vehicle and used Toyota's "Connected Services." *Id.* at 19. Through each of those actions and others, Plaintiff repeatedly accepted Toyota's Connected Services Terms of Use ("Terms of Use"), which contained a clear and conspicuous arbitration provision and class action waiver. *Id.* at 13–15, 17–22.

Plaintiff does not dispute these facts because he cannot. *See* ECF 38, 40. On August 22, 2025, Plaintiff filed his Response in Opposition to Toyota's Motion to Compel, but Plaintiff failed to challenge any of Toyota's evidence that he agreed to arbitrate or raise any substantive arguments. *See generally* ECF 40. Instead, Plaintiff deferred entirely to his Motion for Limited Discovery ("Discovery Motion"), ECF 38, in which Plaintiff sought to embark on a broad fishing expedition to support ill-formed legal arguments regarding notice, consideration, and unconscionability, *see* ECF 40. Plaintiff's deference to his Discovery Motion amounts to a concession that ***Plaintiff has no good faith basis (legal or factual) to challenge arbitration***. As explained in Toyota's opposition, Plaintiff's Discovery Motion fails to establish a compelling need for the discovery sought because Plaintiff does not dispute that he agreed to arbitrate his claims or contest Toyota's evidence he did so, and the Court can evaluate Plaintiffs' (erroneous) legal

---

[1] Toyota cites to the CM/EC-generated page numbers of filed documents.

arguments based on the information already before it. *See* ECF 41. Plaintiff's actions are gamesmanship to try and avoid arbitration—a tactic that this Court recently rejected under a different playbook. *Mansour v. Stanley*, 2025 WL 2380456, at *9, 16–23 (E.D. Tex. Aug. 15, 2025) (Mazzant, J) (compelling arbitrating and rejecting unfounded resistance by plaintiff to same). This matter is ripe for the Court's swift adjudication in line with the Supreme Court's directive to "move the parties . . . into arbitration as quickly and easily as possible," as required by the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983). Toyota's Motion to Compel should be granted.

## II.     PROCEDURAL BACKGROUND

Toyota set forth the relevant factual background for its Motion to Compel in its opening brief but provides the following additional procedural background. *See* ECF 31 at 7–15. Before filing its Motion to Compel, counsel for Toyota contacted counsel for Plaintiff to notify them that Plaintiff is bound by a mandatory arbitration provision. In response, Plaintiff requested broad, unnecessary discovery, which Toyota explained was not permitted in the Fifth Circuit. ECF 38-1, 38-2. Toyota, accordingly, was forced to file this Motion to Compel, in which Toyota included all of the relevant supporting evidence sought by Plaintiff. *See generally* ECF 31.

Two days before Plaintiff's deadline to file its response to this Motion to Compel (August 5, 2025, ECF 28), Plaintiff's counsel notified Toyota that he intended to move for arbitration-related discovery and sought an extension of his deadline to respond to Toyota's Motion to Compel. Toyota granted that request, and the parties stipulated to extend Plaintiff's deadline to file a response to August 21, 2025. ECF 36. Plaintiff subsequently filed his Discovery Motion, which was not docketed until August 11, 2025, due to Plaintiff's failure to include a certificate of

conference under LR CV-7(i).  ECF 37, 38.  Toyota timely responded to Plaintiff's Discovery Motion, and Plaintiff did not file a reply.  ECF 41.

Despite the stipulation, Plaintiff did not file a response to Toyota's Motion to Compel on August 21, 2025.  *See* ECF 36 (stipulating deadline).  Toyota's counsel reached out to Plaintiff's counsel the following day to inquire and offered a one-day extension.  Plaintiff filed his response brief on August 22, 2025, suggesting (without support) that his response brief was not due on August 21, 2025 because (i) the Court had not yet entered an order on ECF 36, the parties' stipulated extension of Plaintiff's response deadline and (ii) Plaintiff had filed his Discovery Motion.  If Plaintiff truly intended to rely on the Court's entrance of an order on ECF 36, his deadline to file a response brief expired on August 5, 2025, the last Court-approved deadline.  ECF 28.  And Plaintiff did not move this Court for an order to stay his deadline to file a response to Toyota's Motion to Compel pending a ruling on Plaintiff's Discovery Motion.  Had Plaintiff properly raised the issue, Toyota would have opposed because, as also set forth in Toyota's response to Plaintiff's Discovery Motion, ECF 41, Plaintiff is not entitled to any discovery, and Toyota's Motion to Compel is ripe for swift adjudication.

### III.   ARGUMENT AND CITATION TO AUTHORITY

**A. Toyota Has Established That Plaintiff Must Arbitrate His Claims Against it.**

"Because of the strong presumption in favor of arbitration, [Plaintiff] bears the burden to show that either the agreement is invalid or that the claims are outside of the agreement's scope." *Mansour*, 2025 WL 2380456, at *4.  Plaintiff has failed to meet his burden on either issue.  Plaintiff does not challenge the evidence and legal arguments in Toyota's Motion to Compel that Plaintiff agreed to arbitrate his claims asserted against Toyota.  *See* ECF 40 (not challenging same). Toyota's evidence establishes that Plaintiff accepted and is bound by multiple versions of Toyota's

3

Terms of Use in effect from March 20, 2021 through January 21, 2025 through his use of the Toyota App, Connected Services, and his subject vehicle itself. ECF 31-1. Those Terms of Use include a provision entitled, "Dispute Resolution and Mandatory Arbitration," and require, in relevant part, arbitration of any dispute "regarding the Services, System, Software or Service Content or any other aspect of this Agreement." *E.g.*, ECF 31-1, Ex. 5 at 14.

As Toyota explained in its response to Plaintiff's Discovery Motion, ECF 41, Plaintiff has not submitted any declaration or evidence that he did not accept the Terms of Use. And Plaintiff does not dispute that Plaintiff's claims against Toyota are covered by the Terms of Use or that the Terms of Uses' delegation clauses delegate any such issues relating to the scope or enforceability of the arbitration provision to the arbitrator. *See* ECF 31 at 23. Accordingly, as Courts throughout the Fifth Circuit, including this Court, have found on similar facts without any pre-arbitration discovery, Plaintiff is bound by the mandatory arbitration provision in the Terms of Use. *E.g., JLR Glob., LLC v. Paypal Holding Co.*, 2023 WL 2527158, at *4 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.); *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019); *Walker v. Neutron Holdings, Inc.,* 2020 WL 703268, at *4 n.3 (W.D. Tex. Feb. 11, 2020); *McKimmy v. OpenSea*, 2023 WL 6370907, at *2 (S.D. Tex. Mar. 22, 2023).

### B. Plaintiff Has No Legal Basis To Challenge Arbitration.

In his response to this Motion to Compel, Plaintiff did not address any of the arguments raised by Toyota, nor did Plaintiff raise any substantive arguments or cite any authorities. Under Fifth Circuit law, Plaintiff has accordingly waived any such arguments. *See, e.g., Charboneau v. Box*, 2017 WL 1159765, at *13 (E.D. Tex. Mar. 29, 2017) (Mazzant, J.) ("[F]ailure to brief an argument in response to [a motion to dismiss] results in waiver of that argument. . ."); *MRK2 Brokerage LLC v. Deutsche Bank Nat'l Tr. Co.*, 2024 WL 923213 at *4–6 (N.D. Tex. Jan. 10,

4

2024) (similar for motion for summary judgment (citing *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022))); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983)); *see also Sanchez v. Nordstrom, Inc.*, 2020 WL 3078533, at *1 (S.D. Fla. June 10, 2020) ("Failure to respond to arguments in a motion to compel arbitration is a sufficient basis to grant the same."); *see also* LR-CV 7(d). Plaintiff had his chance to respond to Toyota's Motion to Compel—indeed, he negotiated an extension of his deadline—but declined to do so. ECF 36, 40.

Instead, Plaintiff deferred entirely to his Discovery Motion. ECF 40. Plaintiff did not cite any legal authority that filing a motion for pre-arbitration discovery somehow stayed a motion to compel arbitration. *Id.* To the contrary, many courts, including a case cited by Plaintiff in his Discovery Motion, grant motions to compel while simultaneously denying motions for pre-arbitration discovery. *E.g., Ghazizadeh v. Coursera, Inc.* 737 F. Supp. 3d 911, 936–38 (N.D. Cal. 2024) (cited by Plaintiff in Discovery Motion, despite the court granting the motion to compel arbitration and denying request for pre-arbitration discovery); *Baldwin v. Beeche*, 2021 WL 1377149, at *5 (E.D. Tex. Apr. 12, 2021) (Mazzant, J.) (granting motion to compel arbitration and rejecting request for discovery on formation of arbitration agreement where the plaintiff did not dispute entering the arbitration agreement in part because discovery "would not help the court decide the motion to compel arbitration"). In any event, if Plaintiff had good faith legal arguments to raise, he surely would have.

The reality is Plaintiff does not have any legal basis to oppose Toyota's Motion to Compel. Allowing Plaintiff another bite at the apple to raise these arguments would be futile. Plaintiff (improperly) raised three legal arguments in his Discovery Motion: (i) Plaintiff did not receive adequate notice of the Terms of Use, (ii) there was inadequate consideration for the Terms of Use,

5

and (iii) the Terms of Use were somehow unconscionable.  ECF 38 at 14–17; *see also* ECF 41 at 14–18 (Toyota's response to same).  Even generously considering these arguments as properly raised in response to the Motion to Compel, they are dead on arrival.

### 1. Toyota's Terms of Use Notification Has Been Blessed by Fifth Circuit Courts.

As Toyota set forth in its opening brief, the design of the Toyota App more than satisfies the Fifth Circuit's criteria for reasonable notice of hyperlinked terms in click-wrap agreements.[2] *E.g., JLR Glob., LLC.*, 2023 WL 2527158, at *4  (enforcing valid clickwrap agreement to hyperlinked terms); *Walker,* 2020 WL 703268, at *4 (finding adequate notice because "a reasonable user would view the Lime App sign-in screen and see that the User Agreement is part of the offer to proceed with the transaction by clicking 'NEXT' or 'Continue with Facebook.'").

As the screenshots included in Toyota's opening brief show, in March of 2021, the Toyota App gave Plaintiff notice *three times* that he was agreeing to the Terms of Use and *each time* he assented to those terms with a "click."[3]  ECF 31-1 ¶¶ 10–15; *see also Jia v. Nerium Int'l LLC*,

---

[2] Plaintiff incorrectly calls the at-issue agreement a "browse[-]wrap agreement."  ECF 38 at 11. An agreement presented through hyperlinked terms that must be accepted via a click is considered a click-wrap agreement.  *E.g., Bongalis-Royer v. RJ Worldwide, LLC.*, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015).  By contrast, browse-wrap agreements are "agreements in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website."  *Ghazizadeh,* 737 F. Supp. 3d at 923 (rejecting similar argument by plaintiff).

[3] As Toyota explained in its opening brief, Plaintiff also assented to the Terms of Use by going through this flow a second time in March 2024 and continuously through is conduct by using Connected Services and driving his vehicle.  ECF 31 at 7, 17–18.  Toyota also pointed out that Toyota's Vehicle Software End User License Agreement and Mobile Application End User License Agreement are incorporated into the Terms of Use and contain identical arbitration provisions. ECF 31 at 14.  Those arguments only further illustrate the various ways that Plaintiff accepted the Terms of Use.  Because Plaintiff has not raised a genuine dispute regarding Toyota's primary assent argument, Toyota accordingly focuses on same because it is the only evidence the Court need to decide to grant Toyota's motion.

2018 WL 4491163, at *3 (N.D. Tex. Sep. 18, 2018) ("It is well established under Texas law that assent through an affirmative 'click' is sufficient to bind the parties.").

The screenshots also illustrate that Toyota's notice included the exact visible features deemed adequate by Fifth Circuit courts. The entire sign-up screen is visible on one page. *Phillips* 2019 WL 4861435, at *5. The hyperlinked words "**Connected Services Terms of Use**" are in red, bold font, making them stand out from both the white screen and the surrounding black text. *Id.*; *see also May v. Expedia, Inc.,* 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018) (finding sufficient notice where the hyperlinks were "in blue, as opposed to black, font to indicate they were hyperlinks") , *R. & R. adopted*, 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018); *McKimmy*, 2023 WL 6370907, at *2 ("Notice is particularly sufficient when the terms of service are hyperlinked and typed in bold colored font"). And the hyperlinks are in close proximity to the button that Plaintiff needed to "click." *Phillips,* 2019 WL 4861435, at *5; *see also McKimmy,* 2023 WL 6370907, at *2.

In his Discovery Motion, Plaintiff cites to several out-of-circuit decisions from the Ninth Circuit.[4] ECF 38 at 10–11. But even under these cases, the Toyota App provided reasonably conspicuous notice. When analyzing agreements similar to the one at-issue here, *all* of the cases cited by Plaintiff support a finding that a hyperlink (i) in bold, contrasting colored font, (ii) displayed in close proximity to the assent button; (iii) with notice that "[b]y continuing, you agree

---

[4] Plaintiff also cites to one New Jersey Supreme Court case, *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 447, 99 A.3d 306, 315–16 (2014) and one Third Circuit case, *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 601 (3d Cir. 2020). **First**, New Jersey has a "heightened standard for contractual waiver-of-rights provisions" that at least one court found is preempted by the FAA. *Stone v. Exos Hum. Cap., LLC*, 2025 WL 1898969, at *7-12 (S.D.N.Y. July 9, 2025). And in any event, New Jersey's heightened standard does not apply to this dispute applying Texas law. **Second**, *Bacon* is unhelpful because it concerned an in-person agreement, not an online one. 959 F.3d at 601.

to Toyota's handling of vehicle data according to the Connected Services Terms of Use and Connected Services Privacy Notice," ECF 31-1 ¶ 11, provides reasonably conspicuous notice and evidences that the customer unambiguously manifests his assent to the hyperlinked terms. *Compare Ghazizadeh,* 737 F. Supp. 3d at 923 (finding similar); *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1–2 (9th Cir. Aug. 18, 2025) (reversing *Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 850 (S.D. Cal. 2024) (cited by Plaintiff and finding similar) *with Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *4 (C.D. Cal. Jan. 23, 2025) (finding inadequate notice where hyperlinks merely underlined); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (finding inadequate notice where hyperlinks were same color as other font); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (concerning browse-wrap agreement).

In addition to visual features, Ninth Circuit courts also consider the "context of the transaction." *Morrison*, 2025 WL 2389424, at *2. Applied here, under the cases relied on by Plaintiff, the context of Plaintiff's transaction further demonstrates the Terms of Use were reasonably conspicuous. A reasonable user subscribing to Toyota's Connected Services, which allow Toyota to use data transmitted from the customer's vehicle to provide services that enhance the customer's vehicle experience, through the Toyota App "would have contemplate[d] some sort of continuing relationship" that prompted scrutiny of the website for any contractual obligations or terms under the "totality of the circumstances." *Id.*; *see also Ghazizadeh*, 737 F. Supp. 3d at 923 (similar); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (similar and specifically noting "[a]n app is different from a typical one-and-done interaction between the user and a traditional website—the app's presence on the phone until deleted carries the connotation that the user will also have ongoing access to that app unless something material changes").

Thus, under any case cited by either party, Plaintiff had adequate notice that he was assenting to the Terms of Use.

### 2. Any Plausible Issues of Unconscionability or Consideration Have Been Delegated to the Arbitrator to Decide.

In his Discovery Motion, Plaintiff vaguely argues—without citing *any* legal authority—that the agreement is somehow unconscionable and that Plaintiff was not given anything in exchange for the agreement to arbitrate. ECF 38 at 4, 14. As an initial matter, to the extent the Court is inclined to even consider these arguments improperly raised in a separate motion, Plaintiff has further waived them because he has not clearly identified these legal theories or supported them with any case law. *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) ("It is not enough to merely mention or allude to a legal theory. We have often stated that a party must press its claims." (internal citation omitted)). Nevertheless, any potentially applicable legal theory relating to consideration for the Terms of Use or their purported unconscionability has been delegated to the arbitrator.

It is undisputed that the Terms of Use contain a valid delegation clause and as such the arbitrator, not the Court, should decide issues of arbitrability. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2018) (collecting cases). This includes any challenges to conscionability. *Id.*; *see also Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396–97 (5th Cir. 2019); *Chlarson v. EK Real Est. Servs. of N.Y., LLC*, 2022 WL 2392648, at *8 (W.D. Tex. July 1, 2022). This is also true for any claim that the Terms of Use lacked consideration. *Dobbs v. Health IQ Ins. Servs.*, 2022 WL 2974713, at *3 (E.D. Pa. July 27, 2022) (declining to consider consideration argument due to delegation clause). That is because there is undeniably consideration for the *arbitration provision*, which is severable from the Terms of Use as a whole. *Toth v. Everly Well, Inc.*, 118 F.4th 403, 408-09 (1st Cir. 2024) (citing *Rent-A-Center v. Jackson*, 561 U.S. 63, 70-71 (2010)).

Texas and Fifth Circuit courts are clear that only "bilateral promises to arbitrate" are needed to create consideration for a valid arbitration agreement. *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 918 (5th Cir. 2014) (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding)); *see also Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283 (M.D. Fla. 2025) ("There is valid consideration for the arbitration agreement because the parties mutually waived their right to suit in favor of arbitration." (collecting cases)). The Terms of Use clearly state: "YOU [] AND TOYOTA EACH AGREE TO SUBMIT ANY DISPUTE RELATED TO THIS AGREEMENT [] TO BINDING INDIVIDUAL ARBITRATION." ECF 31-1, Exs. 1–4. Such a bilateral promise therefore constitutes consideration for the arbitration agreement, which is the only issue potentially before this Court.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in Toyota's opening brief, Toyota respectfully requests the Court grant its Motion to Compel Arbitration and stay this case pending the outcome of arbitration.

Dated: September 11, 2025                    Respectfully submitted,

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III (TX 19196650)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: ted.stevenson@alston.com

*Counsel for Defendant Toyota Motor North America, Inc.*

## Certificate of Service

I certify that I electronically filed this document through the Court's CM/ECF system on September 11, 2025, with notice of case activity generated and sent electronically to all counsel of record.

*/s/ Theodore Stevenson, III*