**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

PHILIP SIEFKE,
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

TOYOTA MOTOR NORTH AMERICA, INC., PROGRESSIVE CASUALTY INSURANCE COMPANY, and CONNECTED ANALYTIC SERVICES,

Defendants.

Case No. 4:25-cv-00406-ALM

# TOYOTA MOTOR NORTH AMERICA, INC.'S SUR-SUR REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT AND CITATION TO AUTHORITY .......... 2

A. Plaintiff's Attempts to Distinguish Cases Establishing that Plaintiff Assented to and Had Adequate Notice of Toyota's Terms of Use Fall Flat. .......... 2

B. Plaintiff Acted Improperly and Waived His Substantive Arguments by Deferring to His Discovery Motion in Lieu of Filing a Substantive Response. .......... 6

III. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baldwin v. Beeche*,
2021 WL 1377149 (E.D. Tex. Apr. 12, 2021) ........ 8, 9

*Bongalis-Royer v. RJ Worldwide, LLC*,
2015 WL 12778846 (E.D. Tex. July 16, 2015) ........ 2

*Charboneu v. Box*,
2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) ........ 7

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ........ 8, 9

*Hargrave v. Fireboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ........ 7

*Jackson v. Royal Caribbean Cruises, Ltd.*,
389 F. Supp. 3d 431 (N.D. Tex. 2019) ........ 7

*JLR Global, LLC v. PayPal Holding Co.*,
2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) ........ 2, 3

*Mansour v. Stanley*,
2025 WL 2380456 (E.D. Tex. Aug. 15, 2025) ........ 5, 6

*Martinez v. Smile Outlets, PLLC*,
2023 WL 11959700 (N.D. Tex. Jan. 23, 2023) ........ 7

*McKimmy v. OpenSea*,
2023 WL 6370907 (S.D. Tex. Mar. 22, 2023) ........ 4, 5

*MRK2 Brokerage LLC v. Deutsch Bank Nat'l Tr. Co.*,
2024 WL 923213 (N.D. Tex. Jan 10, 2024) ........ 7

*Phillips v. Neutron Holdings, Inc.*,
2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ........ 3, 4

*Sanchez v. Nordstrom, Inc.*,
2020 WL 3078533 (S.D. Fla. June 10, 2020) ........ 8

*Vela v. City of Houston*
276 F.3d 659 (5th Cir. 2001) ........ 8

*Walker v. Neutron Holdings, Inc.*,
2020 WL 703268 (W.D. Tex. Feb. 11, 2020) ........ 3

*Willis v. Cleco Corp.*,
749 F.3d 314 (5th Cir. 2014) ....................................................................................6

*Yanez v. Dish Network, L.L.C.*,
140 F.4th 626 (5th Cir. 2025) ................................................................................5, 6

**RULES**

Local Rule CV-7(f) ....................................................................................................1

## I. INTRODUCTION

After missing multiple briefing deadlines and repeatedly failing to follow the procedural rules of this Court,[1] Plaintiff filed a sur-reply to Toyota Motor North America Inc.'s ("Toyota") Motion to Compel Arbitration ("Motion to Compel" or "Motion"). ECF 47 ("Sur-Reply").[2] Including his Sur-Reply, Plaintiff has had ***every*** opportunity to substantively oppose Toyota's Motion to Compel or to move this Court to stay briefing on the Motion to Compel pending a ruling on Plaintiff's separate Discovery Motion (which Toyota would have opposed). Not only has he failed to do either, even with the benefit of a sur-reply, he has largely failed to submit ***any*** legal authority in support of his various positions (including that the Court's evaluation of the Motion to Compel should be stayed pending a ruling on the Discovery Motion), and certainly not any applicable, controlling authority.

As set forth in Toyota's Motion to Strike and in the Alternative Motion for Leave to File a Sur-Sur-Reply, filed contemporaneously with this Motion, Plaintiff's Sur-Reply raises new arguments that could have been raised in Plaintiff's Response in Opposition to Toyota's Motion to Compel ("Response"), ECF 40, but were not, including—most egregiously— attempting for the first time to distinguish cases Toyota cited in its opening brief. Plaintiff's Sur-Reply also improperly addresses arguments Toyota made regarding waiver and the Court's authority to

---

[1] As set forth in more detail in Toyota's Reply brief in support of its Motion to Compel ("Reply"), ECF 44, Plaintiff did not file a response to Toyota's Motion to Compel until a day after the stipulated deadline, nor did he file a reply in support of his separate Motion for Limited Discovery ("Discovery Motion"), ECF 38. ECF 44 at 7–8. Further, Plaintiff never moved to stay his response brief deadline pending a ruling on his Discovery Motion. *Id.* And, finally, as discussed herein and in Toyota's Motion to Strike filed contemporaneously with this Motion, Plaintiff filed a sur-reply to Toyota's Reply brief with arguments in direct violation of Local Rule CV-7(f) and Fifth Circuit law.

[2] Toyota cites to the CM/ECF-generated page numbers of filed documents.

dispose of Toyota's Motion to Compel while Plaintiff's Discovery Motion is pending. Toyota accordingly addresses these issues raised for the first time in Plaintiff's Sur-Reply that Toyota should have had the opportunity to respond to in its Reply but was unable to because Plaintiff withheld these arguments until his Sur-Reply.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiff's Attempts to Distinguish Cases Establishing that Plaintiff Assented to and Had Adequate Notice of Toyota's Terms of Use Fall Flat.

In Toyota's Motion, it submitted evidence that Plaintiff accepted Toyota's Connected Services Terms of Use ("Terms of Use"), which contained a clear and conspicuous arbitration provision and class action waiver, on multiple occasions when Plaintiff activated Toyota's Connected Services via Toyota's mobile application (the "Toyota App" or "App"), used Connected Services, and drove his vehicle. *See generally* ECF 31. Toyota also cited several analogous decisions in this Circuit finding that, like here, the plaintiff assented to and was reasonably notified of an arbitration agreement contained in a click-wrap agreement on a mobile application or website. *See generally id.* at 17–22. Plaintiff could have addressed these cases in his Response but failed to do so; in any event, Plaintiff's attacks on these cases in his Sur-Reply miss the mark. *See* ECF 47 at 2–3.

Plaintiff argues that *JLR Global, LLC v. PayPal Holding Co.,* 2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) is inapplicable because the Court was applying Delaware law. *Id.* at 2. However, the relevant issue of whether a party can agree to a hyperlinked agreement with an arbitration provision with an online "click" is the same under both Delaware and Texas law as applied by this Court. *Compare JLR Global,* 2023 WL 2527158, at *4 (Mazzant, J.) (recognizing that Delaware courts have "routinely found clickwrap agreements as binding contracts under Delaware law"), *with Bongalis-Royer v. RJ Worldwide, LLC,* 2015 WL 12778846, at *5 (E.D. Tex.

July 16, 2015) (Mazzant, J.) ("Texas courts have repeatedly upheld the validity of 'clickwrap' agreements."). Plaintiff then argues that *JLR Global* is distinguishable because it involved a "click-wrap agreement," whereas, Plaintiff contends (without any authority), "the Toyota App presents a 'browsewrap agreement.'"[3] ECF 47 at 6. Plaintiff is wrong for the reasons set forth in Toyota's Reply, which Plaintiff ignored in his Sur-Reply. *See* ECF 44 at 11 n.2 (explaining that "[a]n agreement presented through hyperlinked terms that must be accepted via a click is considered a click-wrap agreement," whereas a browser-wrap agreement provides for acceptance "simply by continuing to use the website" or application). Regardless of the term of art applied to the notice of agreements at issue here and in *JLR Global,* there is no material distinction between the two.

Plaintiff next argues that the mobile application agreement acceptance flow at issue in *Phillips v. Neutron Holdings, Inc.,* 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) and *Walker v. Neutron Holdings, Inc.*, 2020 WL 703268 (W.D. Tex. Feb. 11, 2020) is distinguishable because the application in those cases more clearly notified users that they were accepting the relevant terms of use. ECF 47 at 7. Specifically, Plaintiff argues that while the app in those cases asked

---

[3] Plaintiff misleadingly suggests that "Toyota's own arguments" in its Reply rely on Plaintiff's consent to "three different versions of a contract." ECF 47 at 8. Not so. As explained in its Reply, Toyota simply pointed out that all three screens in the consent flow notified Plaintiff of the Terms of Use, and therefore Plaintiff assented to the same Terms of Use multiple times. ECF 44 at 6. Each event of acceptance in no way means there were three different contracts; rather, Plaintiff accepted the same contract three different times. And it is immaterial that different iterations of the Terms of Use governed Plaintiff's use throughout the several years that he has had his vehicle. *See* ECF 31 at 13, n.8. It is undisputed that every possibly applicable version of the Terms of Use has a mandatory arbitration provision and class action waiver. *Id.* Further, Toyota has evidenced that Plaintiff accepted one version of the Terms of Use on March 21, 2021. *Id.* at 7–12, 18, n.8. That, basic, undisputed fact alone requires Plaintiff arbitrate his claims. As additional fodder, Plaintiff *again* affirmatively accepted a later version of the Terms of Use on March 9, 2024 by going through the App flow a second time. *Id.* And Plaintiff continuously accepted intermediary versions of the Terms of Use through his conduct. *Id.* at 12, 18–19.

users to confirm that they "have read and agreed to Lime's user Agreement & Terms of Service," the Toyota app states that users are agreeing "to Toyota's ***handling of vehicle data*** according to the Connected Services Terms of Use and Connected Services Privacy Notice." *Id.* (emphasis added by Plaintiff). Plaintiff makes much of this "handling of vehicle data" language while ignoring the critical language immediately after, which informs users that they are agreeing for Toyota to handle their vehicle data *"**according to the Connected Services Terms of Use and Connected Services Privacy Notice**,"* which were hyperlinked immediately above the large "Save Changes" button and contain clear and conspicuous arbitration provisions. ECF 31 at 8–9, 20–21. The instant notification is therefore materially the same as the one at issue in the *Neutron* cases, and like those cases, a reasonable user would know that by clicking this button in the Toyota App, they were agreeing to the Terms of Use.

Plaintiff similarly tries to distinguish *McKimmy v. OpenSea,* 2023 WL 6370907 (S.D. Tex. Mar. 22, 2023) by arguing that the website required users to check a box affirming they "agree to OpenSea's Terms of Service," whereas, in Plaintiff's view, the Toyota App contains "[n]o such clear and unambiguous statement" notifying users that their act of clicking constitutes acceptance to the Terms of Use. ECF 47 at 7. Plaintiff is wrong. As described above, the first screen Plaintiff would have seen in the consent flow would have alerted Plaintiff that he was agreeing to Toyota's handling of his data "according to the [Terms of Use]" "by continuing" (i.e., by clicking "Save Changes" and proceeding to the next screen). ECF 31 at 8–9, 20–21. Plaintiff also ignores the subsequent screens in the consent flow notifying Plaintiff of, including hyperlinks to, and prompting him to accept via "click" the Terms of Use. *Id.* The second screen would have prompted Plaintiff to agree to trial of Connected Services by pressing "Continue" on a screen that alerted that "Terms of use apply." *Id.* at 9–10. Plaintiff then would have been shown a third screen

titled "Connected Services Master Data ***Consent***" that again hyperlinked the Connected Services Terms of Use and Privacy Notice and prompted Plaintiff to agree to the transmission of data from his vehicle to provide Connected Services by pressing "Accept" or "Decline." *Id.*at 11 (emphasis added); *see id.* at 10–12, 21. As in *McKimmy*, a reasonable user would have known that by pressing "Accept" they were agreeing to the Terms of Use governing the Connected Services they were agreeing to allow Toyota to provide. Indeed, the Terms of Use themselves explicitly provide for assent by "accepting any part of the [Terms of Use] via [Toyota's] App." *See id.* at 12.

Viewed individually and collectively, each screen in the consent flow reasonably notified users that by proceeding through the consent flow, they were assenting to the Terms of Use governing the Connected Services they agreed to receive. Tellingly, despite going out on a limb to make these arguments in a sur-reply, Plaintiff does not even attempt to distinguish the many other cases cited by Toyota, ECF 31 at 17–18, 22, or rehabilitate the cases Toyota distinguished on this issue from his Discovery Motion, ECF 44 at 12–13. And critically, Plaintiff has not refuted Toyota's description of the appearance or content of these screens (including the hyperlinks to the Terms of Use), nor has he denied that he proceeded through the consent flow by clicking the described buttons in March 2021 and March 2024. *See id.* at 8–9. Plaintiff therefore has failed to rebut Toyota's prima facie showing that Plaintiff agreed to arbitrate. "[W]here competent evidence showing the formation of an agreement to arbitrate has been presented," the non-moving party must "produce some contrary evidence to put the matter 'in issue.'" *Yanez v. Dish Network, L.L.C.*, 140 F.4th 626, 630 (5th Cir. 2025)). *See also Mansour v. Stanley*, 2025 WL 2380456, at *4 (E.D. Tex. Aug. 15, 2025) (Mazzant, J) ("Because of the strong presumption in favor of arbitration, [Plaintiff] bears the burden to show that either the agreement is invalid or that the

claims are outside of the agreement's scope.").[4] Because there is no genuine dispute that Plaintiff assented to and was reasonably notified of the Terms of Use by completing the consent flow and driving his vehicle, the Court should grant Toyota's Motion to Compel consistent with the above cited cases.

**B. Plaintiff Acted Improperly and Waived His Substantive Arguments by Deferring to His Discovery Motion in Lieu of Filing a Substantive Response.**

In its Reply, Toyota addressed Plaintiff's failure to substantively respond to *any* of Toyota's arguments in its Motion to Compel in his Response brief by pointing out that Plaintiff acted improperly and has now waived his right to oppose Toyota's arguments. ECF 44 at 9–10. In his Sur-Reply, Plaintiff argues that he did not waive his arguments regarding consideration and unconscionability because he asserted them in his Discovery Motion. ECF 47 at 8. Plaintiff's speculative and vague arguments in his Discovery Motion on these points, which he raised without supporting authority as a pretext to manufacture a need for discovery, do not preclude waiver here.[5] *See Willis v. Cleco Corp.*,749 F.3d 314, 319 (5th Cir. 2014) ("It is not enough to merely mention or allude to a legal theory. We have often stated that a party must press its claims." (internal citation omitted)).

---

[4] Plaintiff criticizes Toyota's citation to this standard articulated by this Court in the *Mansour* case, but as shown above, this standard is not new or different from the Fifth Circuit's articulation of the same standard in a case cited by Toyota in its opening brief, ECF 31 at 16 (citing *Yanez* for the applicable standard).

[5] As set forth in Toyota's Reply, should the Court find Plaintiff has not waived his arguments regarding consideration and unconscionability, the Court should decline to consider their substance because they have been delegated to the arbitrator. *See* ECF 44 at 14–15; *see also* ECF 41 at 16–17. And should the Court consider them, it should reject them for the reasons set forth in Toyota's briefing. *See id.* Despite his many opportunities, Plaintiff has failed to provide any authority to the contrary.

In a footnote, Plaintiff attempts to distinguish the cases Toyota cites supporting a finding of waiver here, but his arguments do not help his cause. Plaintiff first claims, without explanation, that the cases are inapplicable because none "involved a parallel motion for jurisdictional discovery." ECF 47 at 9 n.2. Toyota is left guessing why Plaintiff thinks this matters but to be sure, it does not; each of these cases support that a party is deemed to have waived or abandoned arguments it does not meaningfully raise in response to a dispositive motion. Plaintiff has cited no authority suggesting that by filing an entirely separate motion for discovery he is excused from responding to arguments raised in the Motion (or even has grounds to seek a stay). He similarly cites no authority to support his position that cursory, hypothetical arguments previewed in his separate Discovery Motion trump the waiver principles articulated in these cases.

Plaintiff pivots by nitpicking procedural and factual differences between the cited cases and the present one. These minor contextual differences do not diminish the cases' persuasiveness. With respect to *MRK2 Brokerage LLC v. Deutsch Bank Nat'l Tr. Co.*, 2024 WL 923213 (N.D. Tex. Jan 10, 2024) and *Hargrave v. Fireboard Corp.*, 710 F.2d 1154 (5th Cir. 1983), Plaintiff points out that they involved summary judgment motions as opposed to motions to compel arbitration. Plaintiff ignores that courts in the Fifth Circuit and around the country hold that a summary judgment-like standard applies to motions to compel arbitration. *See, e.g.*, *Martinez v. Smile Outlets, PLLC*, 2023 WL 11959700, at *2 (N.D. Tex. Jan. 23, 2023); *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019).

With respect to *Charboneu v. Box*, 2017 WL 1159765 (E.D. Tex. Mar. 29, 2017), Plaintiff argues that that case dealt with the timeliness of a motion to dismiss. While that is true, Plaintiff overlooks that the Court held that the plaintiff *waived* their untimeliness argument *because*—like Plaintiff—they did not raise that point in their response to the defendant's motion to dismiss. *Id.*

at *14. Regarding *Sanchez v. Nordstrom, Inc.*, 2020 WL 3078533 (S.D. Fla. June 10, 2020), Plaintiff argues this case involved a pro se litigant "who refused to engage on the issue of arbitration." ECF 47 at 5 n.2. Even generously crediting Plaintiff here with "engag[ing] on the issue of arbitration"—despite his missing deadlines and filing a non-substantive Response—the court unequivocally stated that failing to respond to arguments raised in a motion to compel arbitration amounts to waiver. That is precisely what Plaintiff has done (or not done) here. Not to mention that pro se litigants are often granted ***more*** deference for failing to raise arguments than represented parties like Plaintiff. Finally, with respect to *Vela v. City of Houston* 276 F.3d 659 (5th Cir. 2001), Plaintiff points out that the Fifth Circuit was evaluating its ability to review an issue on appeal. While true, the Court determined that it could not do so because the appellant failed to raise the defense at the district court level, thereby abandoning the argument. *Id.* at 678–79.

Ultimately, Plaintiff could have— but failed to—request a stay of the Motion to Compel pending a ruling on his Discovery Motion. Toyota pointed this out in its Reply, while also noting that, had Plaintiff done so, Toyota would have opposed such a motion because he has no authority to support a stay. ECF 44 at 8. To the contrary, as Toyota further argued, this Court and others frequently grant motions to compel arbitration while simultaneously denying motions for pre-arbitration discovery. *Id.* at 10 (citing *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 936–38 (N.D. Cal. 2024) and *Baldwin v. Beeche*, 2021 WL 1377149, at *5 (E.D. Tex. Apr. 12, 2021) (Mazzant, J.)). Notably, in these cases, unlike Plaintiff, the party opposing arbitration substantively opposed the Motion to Compel and, contemporaneously with that response, asked the Court to allow discovery prior to compelling arbitration. *See Ghazizadeh*, 5:23-cv-5646, ECF

39 (plaintiff's brief in opposition to motion to compel arbitration); *Baldwin*, 4:20-cv-00639, ECF 25 (same).

Plaintiff does not dispute the outcome of these cases but maintains that *Ghazizadeh* is distinguishable because the movant established that the plaintiff unambiguously assented to arbitration, which Plaintiff claims "is not the case here." ECF 47 at 9. Notably *Ghazizadeh* found assent and compelled arbitration on comparable facts. *See* 737 F. Supp. 3d at 922–30 (finding that the plaintiff had adequate notice of and assented to the arbitration agreement included in hyperlinked terms by clicking "Sign Up" on defendant's phone application). With respect to *Baldwin*, Plaintiff argues it "sheds no light on the necessity of jurisdictional discovery in the present factual circumstances" because the underlying contract was different and the Plaintiff raised a fraudulent inducement defense. ECF 47 at 9 n.3. Plaintiff fails to explain why these differences matter. Similar to the non-movant in *Baldwin*, who did not challenge his assent to the arbitration agreement at issue, Plaintiff has not come forward with any evidence, through a declaration or otherwise, suggesting that he did not assent to the Terms of Use in the manners described in Toyota's Motion. Accordingly, the Court can decide the contract formation question before it based on the ample evidence Toyota provided with its Motion without the need for discovery, just as it did in *Baldwin*.

## III. CONCLUSION

For the foregoing reasons and those set forth in Toyota's opening brief and Reply, Toyota respectfully requests the Court grant its Motion to Compel Arbitration and stay this case pending the outcome of arbitration.

Dated: October 7, 2025 Respectfully submitted,

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III (TX 19196650)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: ted.stevenson@alston.com

*Counsel for Defendant Toyota Motor North America, Inc.*

**Certificate of Service**

I certify that I electronically filed this document through the Court's CM/ECF system on October 7, 2025, with notice of case activity generated and sent electronically to all counsel of record.

*/s/ Theodore Stevenson, III*